IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAVON MOORNING,

        Petitioner,

    v.                                    Civil Action No. 3:14-cv-1
                                               (Judge Groh)

RUSSELL A. PURDUE,

        Respondent.

## REPORT AND RECOMMENDATION

### I. Background

On January 3, 2014, *pro se* Petitioner, Javon Moorning ("Petitioner"), an inmate at FCI Gilmer, filed a Habeas Corpus petition pursuant to 28 U.S.C. § 2241seeking additional credit against his sentence. On January 27, 2014, Petitioner paid the required five dollar filing fee. On February 18, 2014, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted.  Accordingly, an Order to Show Cause was issued against Respondent.  On March 11, 2014, Respondent filed a Motion to Dismiss or, in the Alternative, for Summary Judgment and Response to Order to Show Cause.  On March 13, 2014, the court issued a *Roseboro* Notice, and on May 27, 2014, Petitioner filed his reply. On August 15, 2014, Petitioner filed a Motion to Stay. On December 19, 2014, the petitioner filed a Motion to Withdraw his Motion to Stay. Finally, on January 5, 2015, Petitioner filed a Motion for Judgment on the Pleadings or, in the alternative, Summary Judgment.

### II. Facts

On April 16, 2010, Petitioner was arrested in New Haven, Connecticut on several state charges. (Dkt. No. 16 at 2). On December 8, 2010, while still in state custody, Petitioner was

borrowed by federal authorities pursuant to a *Federal Writ of Habeas Corpus Ad Prosequendum*. (Id.). On July 15, 2011, Petitioner was sentenced to a 100-month term of confinement for Distribution of Cocaine Base. After sentencing, Petitioner was returned to state for prosecution of his pending state charges. On August 1, 2011, Petitioner was sentenced by a Connecticut state court to a 2-year term of imprisonment for Possession of Narcotics with credit for 385 days. The sentence was ordered to run concurrent to the federal sentence. (Id.). On October 6, 2011, the State of Connecticut revoked Petitioner's special parole for a previously imposed 5-year term. On May 2, 2012, Petitioner satisfied his State of Connecticut 2-year obligation but remained in state custody on special parole violation. On December 21, 2012, the State of Connecticut Board of Pardon and Parole conducted a hearing and granted Petitioner parole on March 1, 2013, and Petitioner was released to the Bureau of Prisons pursuant to a federal detainer. (Dkt. No. 16-9).

The BOP prepared a sentence computation for Petitioner based on a 100-month term of confinement and commenced the calculation on March 1, 2013, the day he was released to the exclusive custody of federal authorities. Petitioner was awarded prior custody credit for 87 days that were not credited towards his state sentence, for the time period of April 16, 2010, the date of his arrest, through July 11, 2010, the day before the state started applying jail credits towards his state sentence. (Dkt. No. 16-10, p. 2). In addition, the BOP considered Petitioner for a retroactive concurrent *nunc pro tunc* designation. However, after considering the factors set forth in 18 U.S.C. § 3621(b), the BOP determined that such a designation was not appropriate. (Id.). Petitioner's current projected release date, with consideration for good conduct time, is March 8, 2020. (Id.). Petitioner has exhausted all of his administrative remedies, and this case is now ripe for review.

### III. Contentions of the Parties

## A. Petitioner's § 2241 Motion

Petitioner claims that the BOP has unlawfully refused to obey Connecticut's sentencing order that his state sentence run concurrently with his federal sentence. Petitioner claims that because the BOP has refused "to obey and comply with another sovereigns [sic] sentencing order to have that sovereign sentence ran [sic] "fully concurrent" (absorbed into) <u>with</u> and <u>to</u> the federal sentence[,] [i]rreparable harm and complete travesty to justice has occurred." (Doc. 1-1, p. 2). Petitioner maintains that this "illegal action" has improperly lengthened his federal sentence by an additional 27 months by denying him credit toward his sentence for time spent serving his state sentence in a state facility. More specifically, Petitioner claims that because his federal sentence was imposed first, and his state sentence was imposed "last or second," with the state sentence ordered to have been run fully concurrent with and to the already running federal sentence, that means that there could be no interruption in the already running federal sentence from its imposition date of July 15, 2011. (Dkt. No. 1-1. p. 4). In addition, Petitioner alleges that the BOP failed to properly designate the state prison *nunc pro tunc* so that his federal sentence could appropriately begin on the date it was imposed. (<u>Id.</u>). For relief, Petitioner seeks an order requiring the BOP to adjust his sentence length to reflect his time spent in state custody and confinement.

## B. Respondent's Response

Respondent seeks dismissal of this matter and argues that Petitioner's claims have no basis in law or fact. (Dkt. No. 15). Specifically, the respondent claims that Petitioner has received all credit to which he is entitled because his federal sentence did not commence until he entered federal custody. (Dkt. No. 16 at 1). Furthermore, the respondent maintains that the BOP

was entitled to exercise its broad authority when it refused Petitioner's request for a *nunc pro tunc* designation

## C. Petitioner's Reply

In his reply to the Respondent's response, Petitioner maintains that he should be given credit for this time spend serving his state sentence because the "two" crimes for which he was charged are related conduct and should be served concurrently. (Dkt. No. 23, p. 4). He further maintains that the BOP overstepped its authority when it did not give force to the state judge's order that the sentences be run concurrently, (Id. at 8), and that the state prison should have been designated *nunc pro tunc* in order that his time there be counted toward his federal sentence, (Id.).

## IV. Standard of Review

### Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); *see also* Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the

"rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the

movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. <u>Miller v. Federal Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id</u>. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 1986).

## V. Analysis

A federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). However, in some cases, a federal sentence may begin prior to the Attorney General gaining physical custody of the defendant. Where, as here, the prisoner faces both state and federal charges, the term "received in custody" is particularly important. In such instances, the concept of primary jurisdiction is applicable. Primary jurisdiction is explained in <u>United States v. Smith</u>:

> In the context of successive criminal prosecutions by different sovereignties this
> "chief rule which preserves our two systems of courts from actual conflict of
> jurisdiction" means that the sovereignty which first arrests the individual acquires
> the right to prior exclusive jurisdiction over him,…and this plenary jurisdiction
> is not exhausted until there has been complete compliance with the terms of,
> and service of any sentence imposed by, the judgment of conviction entered against
> the individual by the courts of that first sovereignty…

United States v. Smith, 812 F.Supp. 368, 371 (E.D.N.Y. 1993)(quoting In re Liberatore, 574 F.2d 78 (2d Cir. 1978)).

Primary jurisdiction remains vested in a sovereign until that sovereign relinquishes its primary jurisdiction through dismissal of the charges, bail release, parole release, or satisfaction of the sentence. See Coles v. DeBoo, No. 2:10cv70, 2010 WL 3767113 (N.D.W.Va. September 27, 2010; Chambers v. Holland, 920 F.Supp. 618, 622 (M.D. Pa. 1998) *citing* United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980)("Primary jurisdiction remains vested in the state which first arrested the defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence.").

However, the fact that a state prisoner is in federal court on a federal writ of habeas corpus *ad prosequendum* does not mean that the prisoner's federal sentence has commenced. "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Id. at 912. *See also* Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir. 1992) ("A prisoner is not even in custody for the purposes of section 3568 when he appears in federal court pursuant to a writ *ad prosequendum*; he is merely 'on loan' to federal authorities.")

The Bureau of Prisons, on behalf of the Attorney General, is responsible for calculating federal terms of imprisonment. *See* United States v. Wilson, 503 U.S. 329 (1992). The BOP must follow 18 U.S.C. § 3585(b) when calculating sentences:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; *that has not been credited against another sentence*.

(emphasis added).

In <u>Wilson</u>, the Supreme Court held that under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." <u>Wilson</u>, 503 U.S. 329 at 337. Thus, prior custody credit cannot be awarded to a prisoner if the prisoner has already received credit towards another sentence. *See* <u>United States v. Brown</u>, 977 F.2d 574 (4th Cir.1992) (Defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences unless it has been credited against another sentence); <u>United States v. Goulden</u>, 54 F.3d 774 (4th Cir. 1995) (credit is only available for time spent in custody which has not been credited against another sentence).

In this particular case, the undersigned notes that Petitioner was in the primary custody of the State of Connecticut until he completed his state sentence and was released to the United States Marshal Service pursuant to the federal detainer which had been lodged. Accordingly, except for 87 days that were not counted towards his state conviction, all time that Petitioner was in the Connecticut correctional facility was applied to his state sentence. Because Petitioner cannot receive double credit, Petitioner is not entitled to any further credit against his federal sentence before March 1, 2013, the date he was released from state custody into federal detainer. Further, Petitioner's claim that the Board of Prison's ("BOP") was required to enact his sentence concurrently is incorrect. It is at the discretion of the BOP to designate a state prison as the appropriate place for the federal sentence to be carried out by designating it *nunc pro tunc*. The

exercise of that discretion is based on several considerations by the BOP, and definitely is not required simply because a state orders a sentence to run concurrently. In the absence of the federal judge ordering Petitioner's sentences to run concurrently, the BOP was within its discretion not to designate the state prison *nunc pro tunc*.[1] Accordingly, as the record now stands, Petitioner has already received the maximum credit to which he is entitled to under 18 U.S.C. § 3585(b).

The undersigned is aware that Petitioner filed a "Motion for Appropriate Relief" with the District Court of Connecticut on April 16, 2014.[2] In this motion, Petitioner requested that the sentencing court recommend that the BOP apply the time that he served in state custody towards his federal sentence by retroactively designating the state facility as the place of his federal imprisonment. On December 5, 2014, the District of Connecticut entered a text only order granting Petitioner's motion and noting this it had, "by letter dated 12/05/2014, advised the Bureau of Prisons that it was and is the Court's intent that Moorning's federal sentence in this action run concurrent with his state sentence on related charges and that he receive credit for time served in state custody on the state drug trafficking conviction."[3]

Based on this Order from his sentencing judge, petitioner filed his Motion for Summary Judgment, arguing that Judge Burns has now issued an official order granting the 27 months of related detention credits from the State of Connecticut's August 1, 2011, sentencing order. Clearly such relief is not appropriate. Petitioner misunderstands the import of the Order entered by the District of Connecticut. It is pertinent to note that his federal judgment, entered on July 15, 2011, makes no mention of his state sentence, even though the federal sentencing judge could

---

[1] See United States v. Evans, 15 F.3d 908, 911-12 (4th Cir. 1998)(a federal sentence may commence on a defendant who is already in state custody "if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence.").

[2] See Criminal Docket 3:10-cr-00227-EBB-25 (Dkt. No. 1919) available on PACER.

[3] Id at Dkt. No. 1953.

have ordered his federal sentence to run concurrently or consecutively to his yet to be imposed state sentence. See Setser v. United States, 132 S.Ct. 1463, 1468 (2012). Therefore, in the opinion of the undersigned, this case is like any other in which the BOP must consider a prisoner's request for *nunc pro tunc* designation pursuant to the guidelines of 18 U.S.C. § 3621, including any statement by the court that imposed the sentence.[4] Through her letter, the sentencing judge has now expressed her position on a retroactive designation, and while it may take more time than is satisfactory to Petitioner, the BOP presumably will act upon that position.[5]

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 15) be **GRANTED**, and the petitioner's §2241 petition  be **DENIED and DISMISSED WITHOUT PREJUDICE**.  The undersigned further recommends that Petitioner's Motion to Stay Proceedings (Dkt. No. 25) and Motion to Withdraw Motion to Stay (Dkt. No. 26) be **DISMISSED AS MOOT**, and his Motion for Judgment on the Pleadings (Dkt. No. 27) be **DENIED**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the

---

[4] In considering Petitioner's request for a *nunc pro tunc* designation, the BOP sent a letter to his sentencing judge on October 29, 2013, requesting her position on a retroactive designation. (Dkt. No. 16-11). Ordinarily, the BOP gives the court 60 days to respond, and no response was received from the court within that time frame.(Id. at p. 1).

[5] It appears that there may be some confusion as the sentencing court's actual position on retroactive designation. By utilizing the language "he receive credit for time served in state custody on the state drug trafficking charges," the BOP may be unclear whether they are being directed to apply only the time through May 12, 2012, when he satisfied his sentence on the narcotics possession, as opposed to granting him credit through March 1, 2013, when he completed his service for the special parole violation. However if, a retroactive designation is made for the entire time period, Petitioner's projected release date will change from the current date of March 8, 2020, to on or about July 20, 2017. (Dkt. No. 16-11, p. 3). Moreover, because Petitioner was resentenced on December 10, 2014, pursuant to 18 U.S.C. § 3582(c)(2), his projected release date will change regardless of any potential *nunc pro tunc* designation, because his sentence has been reduced from 100 months to 84 months. See Criminal Docket for Case #: 3:10-cr-00227-EBB-25 (Dkt. No. 1963).

Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), *cert. denied,* 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: January 8, 2015.

/s Robert W. Trumble

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE